Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by Minnie Katz against the Nassau Electric Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed, and complaint dismissed.

Argued June term, 1915, before GUY, BIJUR, and PAGE, JJ.

George D. Yeomans, of Brooklyn (A. C. Mayo, of Brooklyn, of counsel), for appellant.

Mordecai P. Springer, of New York City, for respondent.

---

(167 App. Div. 880)

ANDREW J. ROBINSON CO. v. SECURITY MUT. LIFE INS. CO.   (No. 7314.)

(Supreme Court, Appellate Division, First Department. June 4, 1915.)

1. JUDGMENT ☞678—RES JUDICATA—ACTION TO FORECLOSE MECHANIC'S LIEN.
   The contractor for a building sued the owner for the contract price, and the owner counterclaimed for the amount of a judgment recovered against it in another action to foreclose a mechanic's lien by a subcontractor against the contractor and the owner. *Held* that, so far as material to the issues, the findings in such former action were binding upon the contractor and owner.

   [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1195–1199, 1221; Dec. Dig. ☞678.]

2. JUDGMENT ☞956—RES JUDICATA—EVIDENCE AS TO ISSUES.
   In an action by a contractor against the owner to recover the contract price for erecting a building, evidence *held* sufficient to show that in a previous action by a subcontractor against plaintiff and defendant to foreclose a mechanic's lien, the judgment in which was invoked as res judicata, the court had found that an oral contract made by the contractor with the subcontractor, modifying such subcontract, was unauthorized by defendant owner.

   [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1822–1825; Dec. Dig. ☞956.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. JUDGMENT ⊕725—ESTOPPEL—ACTION TO FORECLOSE MECHANIC'S LIEN— MATERIALITY OF FINDING.

The contractor for a building sued the owner for the contract price, and the owner pleaded as a counterclaim the amount of a judgment against it in a prior subcontractor's action to foreclose a mechanic's lien against the plaintiff contractor and the owner, and an amount for which the owner could have held the subcontractor on its contract if the plaintiff contractor had not made a new oral contract with such subcontractor modifying its original engagement. The judgment in the prior action was invoked as res judicata, and plaintiff contended that the finding in such prior action that its oral contract with the subcontractor was not authorized was not material to the issues, and therefore not binding. *Held* that, since the oral agreement afforded the only basis for the recovery that was had in such prior action against the defendant, it was clear that the finding as to the authorization to make such contract was material to the issues, and binding.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1255–1257; Dec. Dig. ⊕725.]

4. JUDGMENT ⊕713—ESTOPPEL—FINDING—COLLATERAL ATTACK.

Where a judgment in one action works an estoppel as to identical issues in a second, the correctness of a finding upon which the prior judgment was based is not open to review or collateral attack in the second action.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1063, 1066, 1099, 1234–1237, 1239, 1241, 1247; Dec. Dig. ⊕713.]

5. JUDGMENT ⊕956—ESTOPPEL—IMMATERIALITY OF FINDING—BURDEN OF PROOF.

In an action by plaintiff contractor to recover the contract price for erecting a building, where the defendant owner set up certain offsets arising from plaintiff contractor's dealings with a subcontractor, whereby the owner, through the plaintiff's unauthorized oral contract with such subcontractor, lost the right to hold it to its original engagement and was cast in judgment in an action by it to foreclose a mechanic's lien, the findings in such prior action, so far as material to the issues, being conclusive by estoppel, upon the contractor and owner, the burden of proof was upon plaintiff contractor, claiming that a finding that its oral contract with the subcontractor was unauthorized by defendant was immaterial, to show by the evidence and proceedings on the trial that such was the case.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1822–1825; Dec. Dig. ⊕956.]

6. JUDGMENT ⊕721—ESTOPPEL—FINDING IN ACTION TO FORECLOSE MECHANIC'S LIEN.

Plaintiff contractor sued the owner to recover the contract price for erecting a building. A subcontractor had previously sued the plaintiff and the owner to foreclose a mechanic's lien, recovering judgment against the owner. In such action it was found that plaintiff contractor failed to perform work necessary to be completed before the subcontractor could complete its work, and that instead of terminating the subcontract for delay in performance, as permitted by the main contract, and directed by the owner, plaintiff agreed to pay the subcontractor a certain sum to quit, for which sum the subcontractor recovered against the owner. The owner set up the recovery of such judgment as an offset to the contractor's demand. It was not shown that the owner was responsible for the plaintiff contractor's failure to complete the work necessary to be done before the subcontractor could complete its own. *Held*, that the finding in such prior action by the subcontractor was fatal to recovery by the plaintiff contractor against the owner of any judgment unreduced by the claimed offset, since the owner was not a party to the contract of plaintiff with the subcontractor, and could only assert against such subcon-

tractor, through the plaintiff, the defense that the subcontractor had not completed the work within contract time, so that the plaintiff by its own default had precluded the owner from a defense which it would otherwise have had against the subcontractor, as a basis for the claimed offset.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1238, 1252; Dec. Dig. ☞721.]

7. JUDGMENT ☞721—RES JUDICATA—MATTERS AT ISSUE—WORK INCLUDED IN PRIOR JUDGMENT.

In an action by plaintiff contractor to recover contract price for a building, where the answer alleged, and the reply admitted, that the defendant owner "was obliged to and did furnish and complete certain plastering work contracted to be done by a subcontractor as aforesaid, for which it was obliged to, and did pay, under the direction and with the approval of the plaintiff," a certain sum of money, where the architects duly certified under the contract, with a view to charging the subcontractor therefor, that such was the amount "actually and necessarily paid" by the owner to finish the work covered by the subcontract, and where, in the subcontractor's action to foreclose its mechanic's lien, it was found that such were the expenses incurred by the owner in finishing the work, plaintiff contractor could not contend, in its action against the owner to recover the contract price for erecting the building, in which the owner set up the recovery of the subcontractor as an offset, that the cost of completion included work not called for by the subcontractor's contract.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1238, 1252; Dec. Dig. ☞721.]

8. DAMAGES ☞120—BUILDING CONTRACT—OFFSET BY OWNER AGAINST CONTRACTOR.

Plaintiff contractor for a building sued the owner to recover the contract price, and the owner set up as an offset the recovery of a judgment against it in an action to foreclose a mechanic's lien by a subcontractor for part of the work, which judgment could not have been had against the owner, if the plaintiff, chief contractor, had not itself been in default in the performance of the work and had not made a new oral contract with such subcontractor, unauthorized by the owner, whereby the owner lost its right to do the work itself upon delay in completion and to charge such subcontractor with the excess in cost over contract price. Plaintiff contractor contended that the cost of completing the work, which defendant owner had not been able to charge against the subcontractor in the mechanic's lien action on account of plaintiff's own default, would not have been the measure of damages against the subcontractor, and so could not be set up as an offset against it (the plaintiff). *Held*, that as the defendant owner expressly required that the plaintiff, in completing the work, employ only union labor, and pay no higher wages than the subcontractor had done, it could not be assumed from the mere fact that plaintiff used union labor, unless the court could say by judicial notice that union labor is more expensive at the same rate than nonunion labor, which it could not do, that the cost of completion, under the circumstances, was not the measure of damages against the subcontractor, lost to the defendant owner by the plaintiff's fault, and so the proper amount of the offset against such plaintiff.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 291–305; Dec. Dig. ☞120.]

Scott, J., dissenting.

Appeal from Special Term, New York County.

Action by the Andrew J. Robinson Company against the Security Mutual Life Insurance Company. Judgment for plaintiff, and defendant appeals. Modified and affirmed.

See, also, 165 App. Div. 906, 149 N. Y. Supp. 1069.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, CLARKE, and SCOTT, JJ.

Harvey D. Hinman, of Binghamton, for appellant.
Edward S. Clinch, of New York City, for respondent.

LAUGHLIN, J.   This action was brought to recover a balance alleged to be due and owing to the plaintiff under and by virtue of the provisions of a contract in writing, made by the parties to this action on the 1st day of March, 1904, by which the plaintiff, therein designated as the contractor, agreed to furnish and provide all materials and perform all the work necessary for the erection of an office building on premises owned by defendant, likewise designated owner, in the city of Binghamton, N. Y., according to plans, drawings, and specifications to be furnished by the architects of the owner; the building to be completed on or about the 1st day of March, 1905, or within such additional time after that date as would equal the period that the contractor might be delayed by the owner in commencing the excavation after the 1st of April, 1904.  The contract was construed by the parties as constituting the plaintiff superintendent of construction for defendant, notwithstanding certain general provisions designed to insure completion within the time specified, and such it was in effect at least as between the parties, for the owner agreed to reimburse the contractor for "the total necessary actual cost of all labor and material" and to pay it, evidently as compensation for its services, 5 per cent. in addition thereto, it being provided that the contractor should not receive a percentage on the cost price of any material which the owner might have and which might be used in the building, but only upon the expense in laying and using the same, and that in no event should the 5 per cent. exceed the sum of $25,000; and it was provided that the materials should be purchased pursuant to competitive bidding and from vendors and at prices approved by the owner, and that, unless otherwise agreed by the owner, all labor and services should also be employed pursuant to competitive bidding approved by the owner.  The contract contained other provisions to the effect that the owner should pay the contractor monthly for the actual cost of labor and materials and the 5 per cent. in addition thereto, upon statements and vouchers to be submitted to the owner by the contractor; that the owner should have the right to retain out of any payments due an amount sufficient to indemnify it against any lien or claim chargeable to the contractor, for which, if established, the owner might become liable; and that if, after final payment, the owner should be obliged to discharge any such lien, the contractor should reimburse it therefor; and that the owner should be at liberty to terminate the employment of the contractor and to take possession of the work if the contractor should at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or materials of proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of its agreements, and such refusal, neglect, or failure should be certified by the architects, as therein provided.  And it was provided that the contractor should pay, as liquidated damages, the sum of $100 per day for each and every

day after March 15, 1905, until the building should be completed; but it was provided, among other things, that the contractor was to be allowed for delays caused by the owner or its architects, or by any other contractor, or by strikes or lockouts caused by acts of employés.

There is no controversy with respect to the cost of the work, or the amount of plaintiff's percentage thereon, or the balance unpaid on either item. The only questions arise with respect to a claim made by the defendant to an offset against the amount claimed by the plaintiff, on account of two items of expenditure which it claims it was obliged to make, owing to acts of the plaintiff in violation of its duty under the contract.

On the 15th day of October, 1904, the plaintiff, pursuant to the provisions of the contract, let the work "mentioned in the specifications and shown on the drawings" for the "Plain and Ornamental Plastering" to McNulty Bros., who agreed to complete it by the 28th day of November, 1904. By the provisions of the contract with McNulty Bros., the plaintiff was at liberty to terminate it for, among other things, their failure to prosecute the work with due diligence. On the 1st day of November, 1904, the architects employed by the owner wrote the plaintiff complaining of the manner in which the plastering work was being done; and on the 23d day of the same month the architects made a certificate in writing to the effect that McNulty Bros. had "failed to prosecute the work, provided for under and by the terms of their contract, with sufficient promptness and diligence to enable them to complete said work within the time and according to the terms of their contract, to wit, November 28, 1904, and that they have failed in the performance of the agreements contained in their said contract," and that with the force of men employed by them it would be impossible to finish their work in less than six weeks, and that such failure "to furnish the necessary number of men and quantity of materials to finish said job within the time agreed upon is sufficient ground to terminate the employment of the said subcontractors on said job," and on that day the defendant notified the plaintiff that it had, on the certificate of the architects, elected to terminate McNulty Bros.' contract, and directed the plaintiff to terminate it by a formal notice inclosed, and to finish the work in accordance with the provisions of article 5 of the contract with McNulty Bros., which, in such case, authorized the plaintiff to take over the work and finish it for the account of McNulty Bros., accounting to them for any difference between the cost of completion and the balance unpaid on the contract and holding them liable for any excess of such costs. On the 25th day of that month, the plaintiff delivered a notice to McNulty Bros., under date of the 23d, to the effect that it would on the 29th, which was the day after the day on which McNulty Bros., were required to complete their work, take possession and finish the plastering pursuant to article 5 of the contract, and also delivered therewith the architects' certificate and the defendant's notice of its election to terminate the contract. The plaintiff took possession of the work covered by the McNulty Bros. contract on or about the 29th day of November, 1904, and completed the same by day labor. The actual and necessary cost of completion was duly certified

by the architects to be the sum of $2,376.17 in excess of the amount for which McNulty Bros. agreed to perform the work, which was $14,856, no part of which had been paid, thus making the cost of completion $17,232.17. It thus appears that, if the contract was rightfully terminated, McNulty Bros. could not have recovered for any work done by them, and would have been liable for the excess of the cost of completion over and above the amount for which they agreed to do the work; and it was admitted by the pleadings that they were financially responsible. This item of $2,376.17 is one of the offsets claimed by defendant.

[1] On the 27th day of February, 1905, McNulty Bros. filed a mechanic's lien against the premises for $11,000.93 on the agreed price and value of the labor and materials performed and furnished by them. They brought an action in the Supreme Court in Broome county to foreclose the lien, and made the plaintiff and defendant herein parties defendant, and in their complaint alleged that they were induced to abandon their contract under an agreement by the plaintiff herein to pay them the cost and expenses of the labor and materials performed and furnished and 10 per cent. in addition thereto, and alleged that the work was performed and the materials furnished with the knowledge, consent, and approval of the owner. Both defendants denied the making of the agreement and pleaded the facts herein stated in justification for the termination of the contract. On the trial of the issues in that action the court found that an oral agreement was made as alleged between the plaintiff and McNulty Bros. on the 26th day of November, 1904, and that any rights the defendants or either of them had or might have had to terminate the written contract "were waived, surrendered, and superseded by the oral agreement" between McNulty Bros. and the Andrew J. Robinson Company, and that the cost of the work and materials, with 10 per cent. added, was $10,522.63, which was also the reasonable value thereof, and a foreclosure was accordingly decreed. Both defendants appealed, but the judgment foreclosing the lien was affirmed without opinion. See 130 App. Div. 892, 114 N. Y. Supp. 1135. The judgment roll in that action was introduced in evidence on the trial of the issues herein by the plaintiff, and it is conceded that the findings, so far as material to the issues, are binding upon both parties. The defendant herein on March 3, 1909, paid that judgment, which with costs, disbursements, and interest aggregated the sum of $14,346.02; and that is the basis of the other offset claimed by it. The court on the trial of the mechanic's lien action also found that, at the time the oral agreement was made, certain work necessary to be performed by the plaintiff herein before McNulty Bros. could complete their contract had not been performed, and that the condition and the amount and quantity of said work were such that the plaintiff herein was and would be unable to perform it on or before the date McNulty Bros. were required to complete their work, and that the nonperformance thereof did and would prevent McNulty Bros. from performing the contract on their part within the time specified therefor; that, by reason of the action of certain labor unions prior to the time of the making of the oral contract, the plaintiff herein was and would be unable to com-

plete the work required of it under its contract with the defendant herein, and would be unable to proceed therewith until McNulty Bros. removed their employés from the building and ceased all efforts to perform their contract, and that, by reason thereof, neither McNulty Bros. nor the plaintiff herein would be able to perform their contracts within the time required, and that for this reason both the plaintiff and the defendant herein "were desirous of making some arrangement" with McNulty Bros. whereby they would surrender their right to complete their contract and would remove their employés, and that such action was necessary to enable the plaintiff and defendant herein to procure labor to work upon the building and to perform labor necessary to be done before McNulty Bros. could "proceed to the completion of their contract, and also other work necessary for the completion of said building"; that the defendant herein did not promise or agree to pay McNulty Bros. for the work performed and labor furnished, and refused, on the ground that it was immaterial, a request, duly made by the defendant herein, to find that the oral agreement was not authorized by it, and also refused to award a judgment against McNulty Bros. in favor of the defendant on its counterclaim duly pleaded for said sum of $2,376.17.

[2-6] No testimony was offered on the trial of this action. The evidence is wholly documentary and consists of the decision and judgment roll in the mechanic's lien action, the certificates of the architects, notices from defendant to plaintiff and from plaintiff to McNulty Bros., and of admissions contained in the pleadings and made on the trial. With respect, therefore, to the matters concerning which findings were made in the other action, neither party offered any further evidence. Counsel for plaintiff, however, concedes that plaintiff had no "direction" from defendant to make the oral contract with McNulty Bros., by which it was found in the other action they were induced to surrender the work to plaintiff in an uncompleted condition. In view of that admission and of documentary evidence clearly showing that defendant, in authorizing plaintiff to terminate the contract with McNulty Bros., contemplated that such termination should be had, and that the work should be completed under and in accordance with the terms of the contract, it must be assumed that such oral contract was not authorized by the defendant. On the 28th of November, 1904, the defendant by letter gave plaintiff specific instructions with respect to completing the work in a manner to hold McNulty Bros. for any deficiency, and, so far as appears, plaintiff assumed to acquiesce without informing defendant with respect to the oral contract made two days before. If the court in the other action considered that the defendant authorized the oral contract, then it would have held defendant liable for any deficiency judgment, but plaintiff only was so held liable. Doubtless defendant was interested in having the work speedily finished, and in taking over the work for that purpose, but it was asserting that as a matter of right under the contract. Its attitude conferred no implied authority on plaintiff to make the oral contract, and there is nothing to indicate that plaintiff ever claimed to have received authority to make the oral contract or

that defendant ratified it. The learned counsel for the respondent contends that the finding in the other action with respect to the oral contract was not material to the issues, and therefore is not binding. It is quite clear that it was deemed material, and that the decision was based thereon, at least in part, for the oral agreement afforded the only basis for the recovery in that action of 10 per cent. more than the value of the work performed by McNulty Bros. It fairly appears, I think, by that decision, that the court determined the amount for which the lien was sustained and the right to a lien by the oral agreement made after the work had been performed. The correctness of the decision is not open to review or collateral attack in this action. If the recovery in that action had been limited to the actual value of the work performed, then in view of the other findings, to the effect that plaintiff was in default for having delayed McNulty Bros. by failing to perform other work required to be done before they could complete their contract, it might be argued that McNulty Bros. were entitled to enforce their lien regardless of the oral contract, but notwithstanding the fact that the court found that the $10,522.63 for which the lien was sustained was the reasonable value of the work and also was the cost thereof, plus 10 per cent., it found in effect that the oral contract precluded the defenses pleaded, and the amount of the lien was, I think, determined by the oral contract on account of which the lien was sustained for 10 per cent. more than the value of the work performed. If that were not so, it was incumbent upon the plaintiff, who claims that the finding is immaterial, to show the contrary by the evidence and proceedings on the trial, which it did not do. Moreover, it would seem that the finding that plaintiff's failure to perform the other work essential to enable McNulty Bros. to complete their work is equally fatal to the judgment recovered in this action, for it has not been shown that the defendant was in any manner responsible for plaintiff's failure in that regard. If it was caused by a strike or lockout, the plaintiff should have shown it. Those findings precluded the defendant from availing itself of its defense of justification for terminating the contract with McNulty Bros. It was not a party to the contract, and could terminate the contract only through the plaintiff, as it attempted to do, and could only assert such defense in the right of the plaintiff, which had precluded itself by its default and by the oral contract from so doing, notwithstanding the fact that, but for such default, the certificates of the architects and notices to McNulty Bros. presumptively established the right of the defendant through the plaintiff to have the contract terminated. The judgment in the other action is conclusive on both parties that McNulty Bros. are not further liable on the contract. Therefore, the making of the oral agreement with them by the plaintiff and plaintiff's failure to perform work, which it was incumbent upon it to do as a condition precedent to the completion of the work by McNulty Bros., forfeited plaintiff's right and also defendant's right through plaintiff to hold McNulty Bros. for any excess of the cost of completion over and above the amount for which McNulty Bros. were to do the work; and such excess has been lost to defendant either by the

unauthorized or negligent act of the plaintiff, or both, and for like reason the defendant was deprived of the defense to the mechanic's lien action and obliged to pay the judgment recovered therein.

[7] It is claimed that the ornamental plastering was not embraced in the contract with McNulty Bros., but that it is included in the amount claimed by defendant as the cost of completing that contract. The sole basis for that claim is an assertion made on the trial by counsel for plaintiff to the effect that the ornamental plastering, although expressly specified in the contract, was not included in the specifications, to which counsel for the defendant assented by saying that he would accept the statement of counsel for the plaintiff with respect thereto. We are unable to say from an examination of the specifications, which it is recited in the contract are for plain and ornamental plastering, whether they cover both or only the plain plaster. That is not material, however, for it was alleged in the answer and expressly admitted by the reply that the defendant "was obliged to and did furnish and complete said plastering work contracted to be done by said McNulty Bros. as aforesaid, for which it was obliged to and did pay, under the direction and with the approval of the plaintiff, the sum of $17,232.17." The architects also duly certified under the contract, with a view to charging McNulty Bros. therefor, that this was the amount "actually and necessarily paid" by the owners for finishing the work covered by the contract; and it was found in the other action that this was the amount of expenses incurred by the owner in finishing the work. It is therefore too late for respondent to contend that the cost of completion, as shown, included other work.

[8] It appears that, owing to labor conditions, the defendant directed plaintiff, after the termination of the contract with McNulty Bros., to complete the contract by day labor, employing only union men, and that it was so completed. The claim is made by counsel for respondent that the cost of completion in such circumstances would not have been the measure of damages against McNulty Bros., and cannot be as against plaintiff. It appears, however, that the defendant expressly required that plaintiff pay no righer rate of wages than McNulty Bros. paid, and it must be assumed that plaintiff observed this requirement. On terminating the work for cause under the contract with McNulty Bros., plaintiff was not required to relet it by contract, but was unrestricted with respect to the manner in which the work should be finished. Unless, therefore, we are able to say by judicial notice that union labor is more expensive at the same rate than nonunion labor, which manifestly we cannot do, there is no basis for this contention.

We are therefore of opinion that the defendant should have been allowed the two offsets claimed by it, viz., $14,346.02, the amount of the McNulty Bros. judgment, which was paid on the 3d day of March, 1909, together with interest thereon to the date of the judgment, together aggregating $18,757.42, and the additional cost of completion over and above McNulty Bros.' contract price, and 5 per cent. thereon, and 5 per cent. on said amount of $10,522.63, erroneously allowed to plaintiff by the judgment, and interest on these three items

from the 10th day of August, 1905, which is the last date from which plaintiff was allowed interest to the date of the judgment, which three items and interest aggregate $4,596.10.

It follows, therefore, that the judgment should be modified accordingly, and, as modified, affirmed, without costs, and all findings of fact inconsistent with the views herein expressed are reversed and findings in accordance with these views will be made, and, on the settlement of the order, any question with respect to the computation of interest may be determined. Settle order on notice.

INGRAHAM, P. J., and McLAUGHLIN and CLARKE, JJ., concur. SCOTT, J., dissents.